# EXHIBIT 12

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM : PART 19
------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK
         -against-
JAMES HUNTER,
                          DEFENDANT.
------------------------------------------x

  INDICTMENT                  320 Jay Street
  343/11                      Brooklyn, New York
  Trial                       September 11, 2012

B E F O R E :
    HONORABLE DANNY K. CHUN,
           Justice and a jury

        (Appearances same as previously noted.)

                       ROSANNE TERMAN
                    SENIOR COURT REPORTER
                    *      *      *      *
```

THE CLERK: Number five on the calendar, case on trial 343 of 2011. James Hunter. Defendant produced and present outside the presence of the jury.

THE COURT: Appearances are the same. Jurors are all here. People, what do you intend to do, Mr. Lee.

MR. LEE: Your Honor, the People rest.

THE COURT: People intend to rest?

MR. LEE: Yes.

THE COURT: Mr. Fink, will there be a Defense case?

MR. FINK: No, Your Honor.

THE COURT: Defense plans to rest. We will

Summations-People

1    I want to address the video, the surveillance
2    video. Members of the jury, it's conceded NYPD
3    messed up, Officer Giuca messed up. In all
4    probability, a lot of people messed up. Do we know
5    what's on the video? No, we don't. Is it possible
6    there could have been evidence? It's possible. Is
7    it possible that there was nothing captured on that
8    video? That's also possible.
9    Members of the jury, Officer Giuca was
10   14 days in. He started working at the Detective's
11   Squad 14 days when he was assigned to this case. Is
12   he the sharpest tool in the shed; no, he's not, but
13   I ask you don't punish the victim in this case
14   because Officer Giuca dropped the ball. We don't
15   know what's on that video, but you have other
16   evidence before you that's just as compelling.
17   Members of the jury, that pretty much ends my
18   summation to you and when you go back to that
19   deliberation room, remember, remember you have
20   Rodwell Jones' testimony, his credible testimony,
21   but remember I gave you more, okay. You have
22   Mr. Wisdom's testimony; you have the phone records.
23   You have the injuries, which are consistent with
24   Mr. Jones' testimony. You have a lot of things
25   before you; that's overwhelming. It is overwhelming

RT

Proceedings

1   Defendant is present, all parties are present. Both
2   sides waive the reading?
3           MR. FINK: Your Honor, I apologize I meant to
4   ask for this before we summed up and I forgot and
5   that is I would request with regard to the DVR that
6   the officer testified, an adverse inference just
7   based upon the fact this was in the custody of the
8   police and the officer was never able to, he
9   testified that he was unable to open it and by the
10  time he realized, it was just too late to go back
11  and obtain.
12          THE COURT: His testimony was that the DVR or
13  CD was defective and it couldn't be opened and it's
14  not that Defense's position is that constitutes a
15  failure to preserve it.
16          MR. FINK: Correct.
17          THE COURT: People, what is your position?
18          MR. LEE: Your Honor, the video was never in,
19  actually in possession of the People. It was
20  damaged from the get go. That's the People's
21  position. There was nothing to preserve because
22  ultimately it could never have been opened so I
23  submit to you that there should be no adverse
24  inference.
25          THE COURT: If there is something that police

Proceedings

1   did not do, he should have followed up upon not
2   being able to open it, he should have been more
3   diligent in trying to obtain another copy or going
4   back to the place or at the get go doing more to
5   attempt to open it. What he testified, he let it
6   sit until it was time to hand it over to the DA.
7   Many, many months later, I'm not sure that that
8   constitutes a legal requirement that I give an
9   adverse inference, certainly counsel summed up on it
10  and he was able to do that without objection, so I'm
11  not going to give an adverse inference charge
12  because that really would be speculating. There is
13  no idea what's there and again, it's not that he
14  didn't get it, he obtained it, but he wasn't
15  diligent enough in trying to open it until it was
16  too late. I won't give the adverse inference charge
17  and I note Defense's objection and exception. And
18  People are you asking the Court to give a
19  consciousness of guilty charge for the defendant
20  leaving the scene?
21          MR. LEE: Yes, we are, Your Honor.
22          THE COURT: I'll give it. It's a standard
23  CJI charge that, that alone can never be enough to
24  convict. Let's have the jurors.
25          THE CLERK: All parties are present, sworn

Proceedings

1  the evidence, with anyone until tomorrow morning
2  when all of you are present. I thank you very much
3  for your service.
4      See you all tomorrow at 9:45. Jurors may
5  step out. Good night.
6      (Whereupon the jury exits the courtroom.)
7      THE COURT: 10:00 tomorrow morning.
8      (The trial is adjourned to September 12, 2012
9  in Part 19.)
10     \*       \*       \*
11
12 It is hereby certified that the foregoing is a true and accurate transcript of the proceedings.
13
14 *Rosanne Terman*
15 ROSANNE TERMAN,
   SENIOR COURT REPORTER

RT