UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
JAMES HUNTER,

                        Plaintiff,

                   v.

CITY OF NEW YORK and OFFICER GIUCA,

                       Defendants.
--------------------------------------------------------------

**MEMORANDUM & ORDER**
12-CV-6139 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff James Hunter, proceeding *pro se*,[1] commenced the above-captioned action on December 11, 2012, and filed an Amended Complaint on December 3, 2014, and a Second Amended Complaint ("SAC") on July 29, 2015, bringing claims against Defendants City of New York and Detective Giuseppe Giuca for (1) deliberate indifference to serious medical needs and deprivation of rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) violation of equal protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; and (3) municipal liability against the City of New York.[2]  (SAC ¶¶ 34–45, Docket Entry No. 82.)

       Currently before the Court is Plaintiff's motion for an award of $63,234 in attorneys' fees resulting from monetary sanctions arising from Defendants' late disclosure of the "Arraignment

---

     [1]  Since May of 2015, Plaintiff has been represented by counsel.  (*See* Notice of Appearance by Leah Friedman, Docket Entry No. 72.)

     [2]  By Memorandum and Order dated September 30, 2021, the Court denied the parties' cross-motions for summary judgment as to the deliberate indifference claim, denied Plaintiff's motion and granted Defendants' motion for summary judgment as to the equal protection claim, and reserved decision as to Defendants' motion for summary judgment on the municipal liability claim.  (Mem. and Order dated Sept. 30, 2021, Docket Entry No. 176.)

and Classification Risk Screening Form" ("ACRS Form").  For the reasons discussed below, the

Court grants Plaintiff's motion for attorneys' fees and awards Plaintiff a reduced amount of the

requested legal fees.

### I.   Background

On June 5, 2019, three months after the close of discovery, Defendants produced the

ACRS Form[3] in support of their cross-motion for summary judgment as to Plaintiff's deliberate

indifference claim.  (*See* Mot. for Sanctions 1–2.)  Defendants indicated that they intended to

rely on the ACRS Form at trial, arguing that it "goes to the heart of [P]laintiff's claims."  (Defs.'

Opp'n to Mot. for Sanctions 1–2, Docket Entry No. 145.)

Because of the late disclosure, Plaintiff moved for sanctions pursuant to Federal Rule of

Civil Procedure 37(c)(1), including for exclusion of the ACRS Form.  (Mot. for Sanctions 1.)

On August 8, 2019, Magistrate Judge Robert M. Levy determined that monetary sanctions were

appropriate to compensate Plaintiff for the additional expense and delay resulting from

Defendants' late disclosure.  (Mem. and Order dated Aug. 8, 2019 ("August 8, 2019 Decision"),

Docket Entry No. 146.)  Judge Levy directed the parties to confer and agree as to a specific

amount that would fairly compensate Plaintiff.  (August 8, 2019 Decision.)  Defendants were

unable to provide the identity of the officer who completed the ACRS Form, and on January 15,

2020, Plaintiff again moved for sanctions pursuant to Rule 37(b)(2)(A)(ii) of the Federal Rules

---

[3]  The ACRS Form is a document used to record a detainee's details after arraignment but before transfer to Rikers Island.  (Mot. for Sanctions 1, Docket Entry No. 143.)  Defendants contend that the ACRS Form is signed by Plaintiff and indicates that upon his admission to Rikers Island, he denied having any immediate medical needs.  (Defs.' Opp'n to Mot. for Sanctions 1–2.)  Defendants argue that the ACRS Form is "important to this lawsuit and goes to the heart of [P]laintiff's claims" as "the parties dispute whether [P]laintiff was offered medical care by [Detective] Giuca" and the ACRS Form "corroborates [Detective] Giuca's testimony that [P]laintiff refused medical treatment."  (*Id.* at 2.)

of Civil Procedure ("Second Sanctions Motion"), arguing that Defendants had failed to comply with their discovery obligations and that the ACRS Form should be excluded. (Second Sanctions Mot., Docket Entry No. 156.) On March 4, 2020, Judge Levy denied Plaintiff's Second Sanctions Motion, finding that the "primary purpose" of the August 8, 2019 Decision "ha[d] been accomplished" in light of Defendants' document and witness productions and because "Plaintiff cannot show that [D]efendants would have been able to [identify the officer who completed the ACRS Form] in 2015, when the [ACRS Form] should have been disclosed." (Mem. and Order dated Mar. 4, 2020, at 2–3, Docket Entry No. 159.)

The parties were subsequently unable to reach an agreement regarding the amount of fees owed by Defendants, (*see* Letter dated Nov. 6, 2020, Docket Entry No. 161), and the Court granted Plaintiff leave to file a motion for attorneys' fees pursuant to Rule 37(c)(1). (Order dated Nov. 12, 2020.) On March 19, 2021, Plaintiff moved for an award of $63,234 in attorneys' fees.[4] Defendants do not oppose the award of attorneys' fees, but oppose the amount requested as unreasonable.[5]

---

[4] (Pl.'s Mot. Attorneys' Fees ("Pl.'s Fees Mot."), Docket Entry No. 170; Pl.'s Mem. in Supp. Pl.'s Fees Mot. ("Pl.'s Fees Mem."), annexed to Pl.'s Fees Mot. as Ex. 1, Docket Entry No. 170-1; Pl.'s Reply in Supp. Pl.'s Fees Mot. ("Pl.'s Fees Reply"), annexed to Pl.'s Fees Mot. as Ex. 12, Docket Entry No. 170-12.)

[5] (*See* Defs.' Opp'n to Pl.'s Fees Mot. ("Defs.' Fees Opp'n"), annexed to Pl.'s Fees Mot. as Ex. 11, Docket Entry No. 170-11.) The Court finds that monetary sanctions are appropriate to compensate Plaintiff for the additional delay and expense resulting from Defendants' failure to timely disclose the ACRS Form. When a party fails to timely produce documents it has an obligation to disclose, "district courts have broad discretion in fashioning an appropriate sanction." *Singh v. Lintech Elec., Inc.*, No. 18-CV-5780, 2021 WL 3914478, at *6 (E.D.N.Y. July 20, 2021) (citing *Fossil Indus., Inc. v. Onyx Specialty Papers*, Inc., 302 F.R.D. 288, 293 (E.D.N.Y. 2014)), *report and recommendation adopted*, 2021 WL 3912416 (E.D.N.Y. Sept. 1, 2021); *see Fossil Indus., Inc.*, 302 F.R.D. at 291, 294 (awarding monetary sanctions where plaintiff negligently failed to disclose emails that were "directly responsive to [defendant's] demands served more than one year prior" and discovery had been closed for over six months); *see also Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 59 (S.D.N.Y.

In support of the motion for attorneys' fees, Plaintiff submits the following documentation: (1) firm "billing records . . . describing the legal services provided and hours expended by [Plaintiff] that are relevant to [the August 8, 2019 Decision]," (Billing Records, annexed to Decl. of Cameron Russell in Opp'n to Defs.' Mot. for Summ. J. ("Russell Decl.") as Ex. 1, Docket Entry No. 170-3); (2) "the invoice for the reporting service retained for the deposition of Officer Scott on December 9, 2019," (Scott Invoice, annexed to Russell Decl. as Ex. 2, Docket Entry No. 170-4); (3) a "copy of Plaintiff's Sixth Set of Requests for Production dated September 6, 2019," (Sixth Set of Production Requests, annexed to Russell Decl. as Ex. 3, Docket Entry No. 170-5); (4) a "copy of Defendants' Responses and Objections to Plaintiff's Sixth Set of Document Requests dated October 8, 2019," (Defs.' Resp. to Sixth Set of Production Requests, annexed to Russell Decl. as Ex. 4, Docket Entry No. 170-6); (5) a "copy of Plaintiff's Deficiency Letter to Defendants dated October 16, 2019," (Deficiency Letter, annexed to Russell Decl. as Ex. 5, Docket Entry No. 170-7); (6) a "copy of Plaintiff's Seventh Set of Requests for Production and Second Set of Interrogatories dated October 4, 2019," (Seventh Set of Production Requests, annexed to Russell Decl. as Ex. 6, Docket Entry No. 170-8); and (7) a "copy of Plaintiff's Letter to Defendants dated November 11, 2019," (Pl.'s Letter dated Nov. 11, 2019, annexed to Russell Decl. as Ex. 7, Docket Entry No. 170-9).

---

2020) (stating that "if the only prejudice to the movant 'lies in the extra time and expense that have been necessary to obtain relevant discovery from third parties,' monetary sanctions may be a sufficient cure" (quoting *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363, 2018 WL 1512055, at *12 (S.D.N.Y. Mar. 12, 2018))).

## II.   Discussion

Plaintiff argues that the requested fees are reasonable as they are calculated based on a reasonable hourly rate and a reasonable number of hours spent on work relevant to the case across an appropriately staffed team.  (Pl.'s Fees Mem. 4.)

Defendants argue that the requested fees are unreasonable, and that "Plaintiff's disproportionate claim [reflects] . . . inflated billing rates, excessive and duplicated time spent on practically every task whether relevant or not, [and] work performed in a duplicative manner." (Defs.' Fees Opp'n 1.)  In addition, Defendants argue that a discount is warranted as "Plaintiff's billing records are vague and replete with block billing."  (*Id.*)

Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *see Ortiz v. City of New York*, 843 F. App'x 355, 358 (2d Cir. 2021) (stating that "district courts [are afforded] broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case." (citing *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))).  In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)).  "'The most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  Additional factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184, 190 (clarifying that district courts should consider, among others, the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see also, e.g.*, *Harris v. Best Companion Homecare Servs., Inc.*, No. 18-CV-5328, 2019 WL 4738821, at *7 (E.D.N.Y. Aug. 26, 2019), *report and recommendation adopted*, 2019 WL 4737056 (E.D.N.Y. Sept. 27, 2019).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Ortiz*, 843 F. App'x at 358 ("[D]istrict courts evaluating a request for attorneys' fees must conduct a 'lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours

6

expended on the action by a reasonable hourly rate,' which results in a presumptively reasonable fee." (quoting *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014))); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989). The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." (alteration in original)); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.").

### a.   Plaintiff's hourly rates are reasonable

Plaintiff argues that the "requested hourly billing rates — $250 for more experienced associates and a counsel; $200 for a junior associate; and $100 for law clerks and paralegals — are squarely in line with lodestar rates approved in [section] 1983 cases in this district."  (Pl.'s Fees Mem. 4 (collecting cases).)

Defendants argue that Plaintiff's hourly rate is unreasonable as "[n]one of the Freshfields' attorneys have [section] 1983 litigation experience and their billing rates must reflect this."  (Defs.' Fees Opp'n 2–7.)  Defendants argue that "reasonable rates for these pro bono attorneys should be $200 per hour for Walsh, $125 per hour for [Russell] and Curwin, $100 per hour for Hadjimichael, and $75 per hour for the paralegal/law clerks."  (*Id.* at 7.)

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to

litigate the case effectively." *Lilly*, 934 F.3d at 231 (quoting *Arbor Hill*, 522 F.3d at 190).  Such

rates should be based on rates "prevailing in the community for similar services of lawyers of

reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l*

*Brotherhood of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465

U.S. 886, 896 n.11 (1984)) (citing *Hensley*, 461 U.S. at 433).  "Determination of the prevailing

market rates may be based on evidence presented or a judge's own knowledge of hourly rates

charged in the community." *Spain v. Kinder Stuff 2010 LLC*, No. 14-CV-2058, 2015 WL

5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (first citing *Farbotko v. Clinton County of New York*,

433 F.3d 204, 209 (2d Cir. 2005); and then citing *Chambless*, 885 F.2d at 1059).  "[T]he

'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing

*Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of

hourly rates by comparing the rates requested with the prevailing rates charged by attorneys

practicing in the district where the court sits.  *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170,

174–76 (2d Cir. 2009) (discussing forum rule); *see also Bergerson v. N.Y. State Off. of Mental*

*Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011); *Retirement Fund of Loc.*

*1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609, 2020 WL 6370060, at

*4 (E.D.N.Y. May 27, 2020) ("[R]easonable rates for the Eastern District rang[e] from $300 to

$450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour

for junior associates, and $70 to $100 per hour for paralegals." (citing *Division 1181*

*Amalgamated Transit Union–N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc*., 270 F. Supp. 3d

593, 618–19 (E.D.N.Y. 2017) (collecting cases))), *report and recommendation adopted*, 2020

WL 5587271 (E.D.N.Y. Sept. 17, 2020); *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 251

(E.D.N.Y. Feb. 3, 2020) ("Under the 'forum rule,' this Court must use the prevailing hourly rate in the Eastern District of New York in calculating the reasonable hourly rate." (citing *Vanacore v. Expedite Video Conferencing Servs., Inc.*, No. 14-CV-6103, 2019 WL 96243, at *1 (E.D.N.Y. Jan. 3, 2019))).

The Court finds that the requested rate of $250 for counsel and senior associates is reasonable and in line with the attorneys' general experience, notwithstanding a lack of expertise in civil rights' litigation. *See Raja v. Burns*, No. 19-CV-1328, 2021 WL 1394638, at *4 (E.D.N.Y. Feb. 2, 2021) ("In this District, hourly rates for civil rights litigation currently range from . . . $100 – $325 per hour for senior associates." (citing *Torcivia*, 437 F. Supp. 3d at 252)); *Salama v. City of New York*, No. 13-CV-9006, 2015 WL 4111873, at *3 (S.D.N.Y. July 8, 2015) (finding $350 per hour reasonable for "a senior associate with nine years' legal experience at the time of her work on this case, but who has not presented any evidence of experience in civil rights cases similar to this one").

In addition, the Court finds that the requested $200 per hour for a junior associate to be a reasonable rate. *See HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 599, (S.D.N.Y. 2021) (finding that "$300 per hour is a reasonable hourly rate" for junior associates staffed on litigation, because they lacked "applicable experience litigating similar matters, the nature of the work remained more complex than the mine run of civil rights cases, and so a slightly above-market rate is warranted" (citing *Torres v. City of New York*, No. 18-CV-3644, 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020), *report and recommendation adopted*, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020))); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("As junior associates at a large, well-respected law firm, [the court] find[s] that a reasonable fee for [a junior associate] is $275 per hour."); *Port Auth. Police Asian Jade*

*Soc'y of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*, 706 F. Supp. 2d 537, 541 (S.D.N.Y. 2010) (finding a junior associate rate of $275 per hour reasonable in part because the case had been pending for five years and "the parties engaged in extensive discovery and took numerous depositions").

The Court similarly finds that the requested rate of $100 per hour is in line with the recognized rates for law clerks and paralegals in this District.  *See, e.g.*, *Local 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 380 (S.D.N.Y. 2019) (awarding fees at $150 per hour "[f]or the hours [junior associate] billed prior" to her admission to the bar); *Quintanila v. Good Eats Meal Plan Corp.*, No. 18-CV-4350, 2019 WL 1936731, at *2 (E.D.N.Y. May 1, 2019) (reducing requested rate of $125 per hour to $100 per hour where plaintiffs did not provide authority for $125 as prevailing rate in this District); *Valvo v. City of New York*, No. 13-CV-6562, 2018 WL 3999011, at *3 (E.D.N.Y. Jan. 23, 2018) ("Law clerks are generally awarded rates similar to those of paralegals." (collecting cases)); *Lopez v. PMMT Inc.*, No. 14-CV-2057, 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016) (recommending reduction from $105 per hour to $100 per hour, "which is the going rate for paralegals in this District"), *report and recommendation adopted*, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017).

     **b.**   **Reasonableness of the hours billed**

Plaintiff requests attorneys' fees for 266.05 hours of work, including 7.3 hours of counsel-level attorney time; 230.75 hours of senior associate time; 1.70 hours of junior associate time; 24.9 hours of law clerk time; and 1.4 hours of paralegal time.  (Billing Records.)  Plaintiff argues that the time spent with regard to the Rule 37(c)(1) motion was reasonable given that "Defendants had indicated [the ACRS Form] would be a cornerstone of their case," (Pl.'s Fees Mem. 5), and that the time spent on additional discovery pursuant to the August 8, 2019

Decision was reasonable due to (1) Defendants' delayed and inaccurate responses to Plaintiff's second set of interrogatories and sixth and seventh set of requests for production, (*id.* at 7–11); and (2) delays surrounding identification of a deponent competent to testify regarding "policies and procedures relating to ACRS forms in general as well as the handling and processing of pre- and post-arraignment detainees," (*id.* at 11). Plaintiff also contends that the "case was appropriately staffed," (Pl.'s Fees Mem. 5), and as the billing records demonstrate, "the vast majority of hours billed for this case (approximately 87%) was performed by just two attorneys (Curwin and Russell), with significantly less time (approximately 3%) billed by one counsel (Walsh), who provided guidance" and that the "[t]wo law clerks (Gold and Madyoon), one paralegal (Langsdorf), and one associate (Hadjimichael) were relied on for discrete tasks, and their inclusion in counsel's team ultimately resulted in a *reduced* fee amount given their lower hourly rate," (Pl.'s Fees Reply at 5). In addition, Plaintiff argues that no reduction in fees is warranted for "vagueness" or block billing, as all relevant entries are sufficiently detailed to assess their reasonableness and "because [Plaintiff] provides additional context for Plaintiff's counsel's billing entries." (*Id.* at 4.) Finally, Plaintiff argues that "no discount for [inter-office] communications is warranted" as "a minimal number of team conferences were held, including to discuss: how to respond to Defendants' belated disclosure; how to respond to Defendants' [r]esponses to Plaintiff's Sixth and Seventh [s]ets of discovery requests; preparations for one court conference . . . [and for] the deposition of Officer Scott." (*Id.* at 4.)[6]

Defendants argue that the "case is overstaffed with three attorneys with similar experience" and that the Court should exclude or discount from the calculation: (1) hours attributed to inter-office communications; (2) "vague billing entries"; (3) "improperly block

---

[6] Plaintiff's responses to Defendants' line-item objections are detailed below.

billed" entries; and (4) "excessive and duplicative billing." (Defs.' Fees Opp'n 9–14.) In

support, Defendants dispute the reasonableness of the amount of hours billed for various tasks,

arguing that: (1) twenty-two hours for research and twenty-six hours to draft the June 17, 2019

Rule 37(c) sanctions letter is "grossly excessive" and that "six hours is a more reasonable time

for such a letter"; (2) twenty-seven hours to confer and research the July 1, 2019 sanctions letter,

(*see* Mot. for Sanctions), is excessive and should be reduced to six hours "since the bulk of the

research was presumably done in connection [with] the similar June 17 letter"; (3) twenty-seven

hours spent preparing a reply to Defendants' Opposition to Plaintiff's Rule 37(c)(1) motion,

"should be substantially discounted if not eliminated entirely" as Plaintiff ultimately determined

not to file a reply brief; (4) 22.8 hours spent in preparation for the September 23, 2019 status

conference before Judge Levy regarding the "identity of one of [two] individuals associated with

[the ACRS Form]," (*see* Minute Entry dated September 23, 2019), "is excessive considering the

limited nature of the discovery order and the status of the re-opened discovery at that point" and

should be reduced to three hours; (5) 13.1 hours spent submitting a FOIL request and then

appealing the results should be denied as "[t]his FOIL request is not relevant to the re-opened

discovery" and was "ultimately futile";[7] (6) 14.5 hours spent researching a motion for sanctions

under Federal Rule of Civil Procedure 37(b)(2)(A)(ii), (Second Sanctions Mot.), should be

denied as "this research was not related to discovery and was ultimately found to [be]

---

[7]  Plaintiff clarifies that he "did not submit one FOIL request, but a total of three separate
requests to two different agencies with potentially relevant information (the New York City
Police Department and the New York Department of Correction) seeking documents that would
identify the individual who filled out the ACRS Form . . . and, in addition, responded to or
lodged an appeal to the decisions on two of those FOIL requests." (Pl.'s Fees Reply 6 (citing
Billing Record entries dated October 2, 8, 10, 15, and 21, 2019).)

meritless";[8] (7) thirty minutes "billed for a phone call wherein discovery was discussed" and "2.4 hours . . . billed to 'memorialize the phone call'" should be "cut to a half hour" as the time billed is "neither proportional nor reasonable to the work required";[9] (8) "[eight] hours . . . spent researching, drafting, and sending [the October 16, 2019] deficiency letter regarding [Defendants'] responses" to Plaintiff's production requests should be denied as "[t]he discovery demands were outside the bounds of the discovery order and this deficiency letter was unnecessary and ultimately meritless";[10] (9) 15.1 hours spent preparing for the November 20, 2019 status conference before Judge Levy, (*see* Minute entry dated Nov. 20, 2019), is excessive and should be reduced to "[t]wo hours of preparation followed by a half hour for the conference";[11] (10) 43.3 hours "spent preparing for and holding the deposition of Officer Scott" concerning the ACRS Form is unreasonable and should be reduced to seven hours for time spent

---

[8] Plaintiff does not address this argument.

[9] Plaintiff argues that additional time following the call was necessary for research "because Defendants, during the October 21, 2019 call, had taken the position that no Department of Correction or NYPD documentation existed specifically describing when and how ACRS forms should be filled out, or more generally describing the process of handling pre- and post-arraignment detainees," and this assertion was eventual proved false by subsequent productions. (Pl.'s Fees Reply at 8.)

[10] Plaintiff argues that "this research and the deficiency letter were necessitated by Defendants' belated and incomplete responses to Plaintiff's Sixth [Requests for Production]" and that "Plaintiff's attempts to ensure Defendants produced [the responsive] documents . . . were eventually vindicated when Defendants belatedly produced their [tenth] and [eleventh] Supplementary Disclosures." (*Id.* at 7.)

[11] Plaintiff argues that "preparation for the November 20, 2019 status conference mostly consisted of drafting and filing Plaintiff's November 19, 2019 letter to the Court," (Letter dated Nov. 19, 2019, Docket Entry No. 154), regarding the status of discovery and documenting delays in production, (Pl.'s Fees Reply 8).

in the deposition and four hours to prepare;[12] and (11) the remaining forty hours not accounted for above, spent on various "demands, interrogatories and disclosures exchanged" should be reduced by half."  (Defs.' Fees Opp'n 12–13).

       In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672, 2013 WL 5502951, at *8–9 (E.D.N.Y. Aug. 26, 2013) ("In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."), *report and recommendation adopted*, 2013 WL 5502950 (E.D.N.Y. Sept. 30, 2013).  To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done.  *See Scott v. City of New York*, 643 F.3d 56, 57 (2d. Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records."); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting that "the party seeking [attorneys'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done'" (quoting *Carey*, 711 F.2d at 1148)).

---

    [12]  Plaintiff clarifies that the time billed toward preparing for Officer Scott's deposition includes: "[d]rafting, reviewing, and editing a deposition outline," and correspondence with Defendants regarding "the individual Defendants had first offered for deposition, Officer Staton, [who] was — despite Defendants' previous assurances — entirely ignorant regarding the subjects to be explored in the deposition," coordinating logistics for the deposition, and an internal meeting to discuss deposition strategy.  (*Id.* at 9–10, 9 n.5.)

After review of the record, the Court finds that the requested fees are reasonable with the exception of time included for researching and preparing Plaintiff's second motion to exclude the ACRS Form pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.  (*See* Second Sanctions Mot.)  The Court finds this motion to be beyond the scope of the August 8, 2019 Decision, because the purpose of the decision was to "put [P]laintiff in the position he would have been in had [D]efendants disclosed the [ACRS Form] in the regular course of discovery" and this purpose has been accomplished as (1) Defendants produced extensive documents and "Officer Renet Scott, who testified at a Rule 30(b)(6) deposition on December 9, 2019," and (2) Plaintiff failed to establish that Defendants' failure to identify the officer responsible for the ACRS Form was in bad faith or that Defendants would have been able to establish the officer's identity in 2015.  (Mem. & Order dated Mar. 4, 2020, at 2–3; *see also Wan v. YWL USA Inc.,* No. 18-CV-10334, 2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) ("In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." (quoting *Quaratino v. Tiffany & Co*., 166 F.3d 422, 425 (2d Cir. 1999))).  Therefore, with the exception of hours billed toward Plaintiff's Second Sanctions Motion, the Court finds that the requested fee is presumptively reasonable.  *Millea*, 658 F.3d at 166 ("Both [the Second Circuit] and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" (citing *Arbor Hill*, 522 F.3d at 183)).  Given that Defendants indicated that "the [ACRS Form] is important to this lawsuit and goes to the heart of [P]laintiff's claims," Plaintiff did not act unreasonably in devoting significant time and resources toward discovery.  (Pl.'s Fees Mem. 5 (citing Defs.' Opp'n to Mot. for Sanctions).)

15

The Court does not view the minimal time billed toward internal conferences as excessive.  *See Wise v. Kelly*, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008) (declining to reduce the hours spent by plaintiffs' attorneys in internal conferences).  In addition, the Court finds that the case was appropriately staffed in proportion to Defendants' representations regarding the importance of the ACRS Form to the case.  *See De La Paz v. Rubin & Rothman*, No. 11–CV–9625, 2013 WL 6184425, at *15 (S.D.N.Y. Nov. 25, 2013) ("[T]his Court has recognized that 'many tasks require or benefit from the attention of more than one attorney.'" (quoting *Broome v. Biondi*, 17 F. Supp. 2d 230, 235 (S.D.N.Y. 1997))); *cf. Dowdell v. Imhof*, No. 10-CV-1332, 2012 WL 959474, at *4 (E.D.N.Y. Mar. 19, 2012) ("On balance, this approach [of staffing five more experienced attorneys] appears to be more efficient than having several less experienced attorneys take the time to educate themselves about unfamiliar subject matter.").

The Court finds that no reduction is warranted for block billing practices as the entries are sufficiently detailed to assess their reasonableness and the block billing is not excessive and generally aggregates related tasks.  *See Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 19-CV-3766, 2021 WL 2333242, at *6 (S.D.N.Y. June 8, 2021) (finding no reduction in fees warranted where "most time entries submitted by [d]efendants' counsel aggregate only related tasks"); *Markey v. Lapolla Indus., Inc.*, No. 12-CV-4622, 2017 WL 9512407, at *8 (E.D.N.Y. Aug. 24, 2017) ("Although the Court notes that the invoices do contain some block billing entries, the Court finds that these are not so extensive as to warrant a percentage reduction in the fees."), *report and recommendation adopted*, 2017 WL 4271560 (E.D.N.Y. Sept. 26, 2017).

Finally, the hours are adequately supported by Plaintiff's counsel's billing logs, (*see* Billing Records), which are "contemporaneous time records indicating, for each attorney [and

16

paralegal], the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1154; *see also Scott v. City of New York*, 643 F.3d 56, 57-59 (2d Cir. 2011) (holding that, without contemporaneous time records, even the district court's "personal observation" of an attorney's work could not constitute grounds for awarding relief).  In consideration of the represented importance of the document involved and the complexity of discovery, the Court finds that no adjustments to the presumptively reasonable fee are necessary.

Because $58,534 represents a reasonable amount of attorneys' fees and is supported by adequate documentation, the Court awards Plaintiff attorneys' fees in the amount of $58,534, which represents the requested amount of $63,234, reduced by the hours devoted to research and prepare Plaintiff's Second Sanctions Motion.[13]  (Second Sanctions Mot.)

---

[13]  The billing records indicate that Plaintiff's counsel spent 18.80 hours at a rate of $250, totaling $4,700, to research and prepare the Second Sanctions Motion.  (*See* Billing Records dated Oct. 9, 2019 ("Legal research for and begin drafting of FRCP 37 motion based on Defendants' failure to adequately answer document requests."); Oct. 10, 2019 ("Draft FRCP 37 motion in response to inadequate document requests."); Oct. 11, 2019 ("Draft FRCP 37 motion; confer with [Curwin] regarding same; edit FRCP 37 motion based on [Curwin's] edits; correspondence with [Walsh] regarding motion."); Oct. 11, 2019 ("Edit motion for sanctions and confer with [Russell] re same."); Oct. 14, 2019 ("Edit FRCP 37 motion to incorporate [Walsh's] edits."); Oct. 14, 2019 ("Confer re strategy re motion for sanctions."); Oct. 15, 2019 ("Update motion for sanctions, including with respect to edits from [Walsh]."); Oct. 15, 2019 ("Edit motion for sanctions and confer with [Russell] re same.").)

**III.   Conclusion**

      For the foregoing reasons, the Court grants Plaintiff's motion and awards Plaintiff

$58,534 in attorneys' fees.

Dated:  October 22, 2021
Brooklyn, New York

                                    SO ORDERED:


                                    s/ MKB
                                    MARGO K. BRODIE
                                    United States District Judge